IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| TALBOT CONSTRUCTION, INC., TALBOT ENTERPRISES, INC., J & K SYNERGY, LLC JOHN ZAMBETTI, and KELLY ZAMBETTI | § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## APPLICATION FOR INJUNCTIVE RELIEF AND/OR SPECIFIC PERFORMANCE

Plaintiff, International Fidelity Insurance Company (the "Surety"), asks this Court to grant an Application for Injunctive Relief and/or Specific Performance against Defendants, Talbot Construction, Inc., Talbot Enterprises, Inc., J & K Synergy, LLC, John Zambetti and Kelly Zambetti (collectively, the "Indemnitors").

## I.
## SUMMARY

1.     The Indemnitors are refusing to uphold their contractual promises to post collateral security with the Surety.  The Surety has made several demands on the Indemnitors to post collateral security in the amount of $335,000 pursuant to its rights under the *Agreement of Indemnity* dated June 11, 2013 (the "AOI").

2.     Due to the contractual promises made by the Indemnitors, this Court should award injunctive relief by virtue of the AOI without requiring the Surety to show all factors traditionally associated with injunctive relief.  *See Wingsco Energy One v. Vanguard Groups*

*Res. 1984, Inc.*, CIV. A. H-86-452, 1989 WL 223756 (S.D. Tex. Nov. 15, 1989).  Accordingly,

the Surety requests that this Court:

> Order the Indemnitors to pay the Surety or alternatively, pay into the registry of the Court $335,000, representing an "amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss." (AOI, ¶SECOND, THIRD).

3.    Without an order compelling the Indemnitors to post the requested collateral

security, the Surety faces irreparable and imminent harm without an adequate remedy at law.

## II.
## BACKGROUND

4.    As outlined in *Plaintiff's Original Verified Complaint for Specific Performance,*

*Equitable, and Other Relief* [Dkt. No. 1][1], the Surety issued numerous construction payment and

performance bonds (collectively, the "Bonds") on behalf of Talbot Construction, Inc., as

Principal, relative to construction contracts (collectively, the "Projects").  In return for issuance

of the Bonds, the Indemnitors agreed to indemnify the Surety from all loss and expense in

connection with any bond written on behalf of the Principal.

5.    The Surety has received and/or is aware of claims exceeding $335,000 under the

Bonds that include, without limitation, the following:

| BOND NO. | PROJECT NAME | OBLIGEE |
|---|---|---|
| GRIFSU0631398 | Lake Forest Hills Elementary School Additions & Renovations, Augusta, GA (B12-009-1603) | County Board of Education of Richmond County |
| GRIFSU0631399 | Welding Shop Renovations for Bevill State Community College, Fayette, AL PH&J#1201CU | Alabama Public School and College Authority |
| GRIFSU0636569 | PNC Alpharetta Avalon Old Milton,  Alpharetta, GA | PNC Bank, National Association |

---

[1] *Plaintiff's Original Verified Complaint for Specific Performance, Equitable, and Other Relief* is incorporated herein for all purposes.

6.      The Surety has made multiple demands for the Indemnitors to honor their obligations. (*See Plaintiff's Original Complaint*, ¶¶20-25). To date, this demand has been ignored.

7.      Because the Indemnitors refuse to post collateral security to the Surety, the Surety will face imminent harm, irreparable injury, and will have no adequate remedy at law with respect to reimbursement for its loss under the Bonds.

8.      The Indemnitors contractually agreed to (a) pay upon demand an amount equal to any claim or demand against the Surety; (b) to deposit as collateral security with the Surety a sufficient amount determined by the Surety to discharge any loss or anticipated loss; and (c) to indemnify the Surety against all payments made because of the Bonds.  Despite the demands for payment of collateral security against the claims on the Indemnitors have failed and refused to perform.

9.      Following notice and hearing, the Surety requests that the Court enter an injunction compelling the Indemnitors to post $335,000 to the Surety or alternatively, into the registry of the Court pending the outcome of this action.

### III.
### ARGUMENT & AUTHORITIES

10.     Courts nationwide have sustained a right on the part of a surety to sue for specific performance of an agreement to furnish it indemnity, exoneration, and collateralization.  Georgia courts harmonize with this nationwide precedent that provides injunctive relief to sureties.  *See Hanover Ins. Co. v. Holley Constr. Co. & Assocs.*, 2012 U.S. Dist. LEXIS 14526, 2012 WL 398135 (M.D. Ga. Feb. 7, 2012).  When an indemnity agreement is signed, an indemnitor promises to protect, collateralize, exonerate, and indemnify its surety.  These Indemnitors so promised, and the Surety is entitled to petition the Court to enforce those promises.

11.     "At the root of the surety's decision to accept potential liability for its principal's contractual undertakings are both the hope and right expectation" that the surety will suffer no loss.  David Slaughter, *Introduction to the Surety's Rights as the Foundation for the Indemnity Agreement, in* THE SURETY'S INDEMNITY AGREEMENT, LAW AND PRACTICE, 2D ED, pg. 8 (Marilyn Klinger, et al, eds., 2008).

12.     "Since at least the time of classical Rome, basic legal rights have existed for the protection of sureties." Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, § 12:97 (2002). Indemnification is an equitable principal of ancient origin that impliedly obligates the indemnitors to reimburse the surety. *Id*. at § 12:99.

## A.     Injunctive Relief Appropriate When Surety has Suffered Losses

14.     In an exchange for millions of dollars in bonding, the Indemnitors in this case promised to "exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and any from and against any and all such losses and/or expenses which the Surety may sustain and incur . . ." (AOI, ¶SECOND).  If the Surety has incurred loss or anticipates loss, the "Indemnitors shall deposit with the Surety, on demand an amount of money or other collateral security acceptable to the Surety . . . whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss, or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement." *Id*.

15.     As contemplated by the AOI, injunctive relief is appropriate whether or not the Surety has sustained any actual loss.  *See, e.g*., *Am. Sur. Co. v. Lewis State Bank*, 58 F.2d 559, 560-61 (5th Cir.1932)("A surety is indeed a favorite of equity, which will extend its aid in

exoneration, quia timet, before he pays, and will subrogate him after he pays, liberally and fully, as against others primarily liable on the debt.")  In *Great Am. Ins. Co. v. Conart Inc.*, the United States District Court for the Middle District of Georgia granted a surety's motion for a preliminary injunction compelling the indemnitors to deposit collateral security with the surety to hold in trust in conformance with the agreement of indemnity. No. 1:05-CV-038 (WLS), 2006 U.S. Dist. LEXIS 17787, *7-8 (M. D. Ga. Mar. 29, 2006). As in the case before this Court, the surety sought a preliminary injunction to cover both past and future losses.  *Id.* at *1. Following receipt of a claim on the bond, the surety made demands upon the indemnitors under the collateral security clause in the indemnity agreement to deposit with the surety collateral sufficient to cover the claims. The indemnitors refused to provide such collateral. *Id.* at *4, *6. The surety subsequently settled the claim on the bond, filed suit for indemnity, and moved the court for a preliminary injunction granting specific performance of the collateral security clause. *Id.* at *7-*8.  The Court ordered the indemnitors to deposit $386,973.44—covering the Surety's $244,530.58 in actual losses and $142,442,86 in potential future losses—to be held in trust during the pendency of the litigation.  *Id.*

16.     The facts in this case compel the same result.

**B.     Necessities of Injunctive Relief Met by Indemnity Agreement**

17.     When an indemnitor agrees to post collateral but then refuses to perform, courts are not hesitant to award the posting of collateral.  *See, e.g., Schwab*, 739 F.2d 431 at 433; *Marine Midland Trust,* 28 F. Supp. 680 at 683-84 ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *see also Maryland Casualty  Co. v. Straubinger*, 19 A.D.2d 26, 29-30, 240 N.Y.S.2d 228, 231 (4th Dep't 1963) (per curiam); *National Surety Corp. v. Titan Construction Corp.*, 26 N.Y.S.2d 227,

230-31., *Schwab*, 739 F.2d 431, 433-34; *Milwaukie Construction Co. v. Glens Falls Ins. Co*., 367 F.2d 964, 966-67 (9th Cir. 1966); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 929-30 (E.D. Pa. 1967); *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1321-1322 (S.D. Fla. 2008)("surety's loss of its right to collateralization cannot be adequately remedied through monetary damages."); *Frontier Ins. Co. in Rehab. v. MC Mgmt*., 2009 U.S. Dist. LEXIS 17307 (W.D. Ky. Mar. 4, 2009)("requiring indemnitors to post collateral to cover an indemnitee's potential liability is the type of specific relief that courts may require."); *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999); *Ticor Title Ins. Co. v. Middle St. Officer Tower A Assocs*., 768 F. Supp. 390, 392 (D. Me. 1991); *Safeco Ins. Co. of Am. v. Criterion Inv. Corp*., 732 F. Supp. 834, 843 (E.D. Tenn. 1989); *Gen. Ins. Co. v. Howard Hampton Inc*., 185 Cal. App. 2d 426, 8 Cal. Rptr. 353 (Cal. Ct. App. 1960)(holding that specific performance ensures the creditor maintains the security position for which it bargained).

18.     The Court in *Hartford* analyzed an indemnity agreement in which the indemnitors contractually agreed that their failure to post collateral constituted irreparable harm. *Hartford Fire,* 2008 U.S. Dist. LEXIS 48602 at *4.  Similarly, the Indemnitors in this case "waive[d], to the fullest extent permitted by applicable law, each and every right which they may have to contest" the collateral deposit provision.  (*See* AOI, ¶ THIRD).

19.     Even if the indemnity agreement is silent, however, the overwhelming majority of courts find that all requirements for specific performance and injunctive relief are met.  *See Nations Pers. of Tex.,* 2004 U.S. Dist. LEXIS 4729 at *6-7 ("Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain").

20.     In *Wingsco,* the Southern District of Texas held that by virtue of the written contract for indemnity, a surety is held to a more lenient standard:

> It is not essential that the claim of the surety for relief should depend on the fact that he will incur irreparable injury; nor must he show any fraudulent disposition of property, or the presence of a wrongful purpose, or special reason for fearing loss; and the insolvency of his surety will not preclude him from maintaining the bill.

*Wingsco*, 1989 WL 223756 at *2.

21.     Commentators agree with the *Wingsco* holding: "Inadequacy of remedy and irreparable injury should be presumed from the indemnitors' failure to voluntarily post collateral."  Jay M. Mann, *Exoneration and Quia Timet,* in THE LAW OF SURETYSHIP, 2D ED., pg. 471 (Edward G. Gallagher ed., 2000) *citing Wingsco,* 1989 WL 223756.

22.     Because the Indemnitors contractually agreed to fully exonerate the Surety, this Court should grant its request for a preliminary injunction.  (*See* AOI, ¶SECOND, THIRD).

## C.     Standard for Injunctive Relief, Traditionally

23.     As highlighted above, courts routinely grant injunctive relief compelling indemnitors to provide collateral security to a surety when this obligation has been given in a written agreement of indemnity.  *Wingsco*, 1989 WL 223756 at *2-3.  Despite the more lenient standard given to sureties, the Surety still meets the following four factors which traditionally govern injunctive relief:

(1) A substantial likelihood of success on the merits;

(2) irreparable injury will be suffered unless the injunction issues;

(3) the threatened injury to the surety outweighs whatever damage the proposed injunction may cause defendants; and

(4) if issued, the injunction would not be adverse to the public interest.

*Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011).

### 1. *A Substantial Likelihood of Success on the Merits*

24.     As stated by the *Wingsco* Court, "No single factor in the above-referenced test is necessarily dispositive." *Id.* at *3 *citing Gonzales v. Franklin County Municipal Court,* 595 F. Supp. 382, 386 (S.D. Ohio 1984). "Proper judgment entails a balancing of all the elements." *Id.* "Usually this 'balancing' focuses on the irreparable harm in the absence of injunctive relief and the harm to the opposing party as a result of injunctive relief." *Id. citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 195 (4th Cir.1977).

25.     The *Wingsco* Court found that "[i]f there is a strong affirmative showing of one factor, the proof required for the other three diminishes." *Id. citing Canal Authority of State of Florida v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974). "This is particularly true with respect to the first factor, namely, the substantial likelihood of success on the merits." *Id.*

26.     "Specific performance of a contract, if within the power of the party, will be decreed, generally, whenever the damages recoverable at law would not be an adequate compensation for nonperformance." O.C.G.A. § 23-2-130. Specific performance is an equitable remedy that can only be granted if there is no adequate remedy at law, and it may not be granted "unless strictly equitable and just." *Kirkley v. Jones*, 250 Ga. App. 113, 115-16, 550 S.E.2d 686, 690 (2001). "A contract upon which specific performance is sought must be certain, definite, and clear; and so precise in its terms that neither party can reasonably misunderstand it." *Hibbard v. McMillan*, 284 Ga. App. 753, 755, 645 S.E.2d 356, 359 (2007).

27.     Georgia courts have consistently "upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds." *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627, 600 S.E.2d 712, 715 (2004); *accord Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555, 583 S.E.2d 220, 223 (2003); *see also Am.*

*Cas. Co. of Reading, Pa. v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002) ("Under Georgia law, parties to an insurance bond are bound by its plain and unambiguous terms."). The Court must "apply the ordinary rules of contract construction." *Anderson*, 267 Ga. App. at 627, 600 S.E.2d at 715.

28.    In recent years a number of federal courts have granted the equitable relief requested by the Surety under facts and contracts which are substantially the same as those in this case.  What these cases teach us is that based on the Surety's unconditional rights and the Indemnitors' specific obligations in the AOI at issue in this case, it is almost certain that the Surety will prevail.

29.    In *Conart*, discussed above, the court granted a surety's motion for a preliminary injunction compelling the indemnitors to deposit collateral security with the surety to hold in trust in conformance with the agreement of indemnity. *Conart Inc.,* 2006 U.S. Dist. LEXIS 17787 at *18.

30.    Here, the Indemnitors entered into an unambiguous contract where in exchange for millions of dollars in bonding, they promised to collateralize the Surety upon demand.  Their refusal to post such collateral is a breach of the indemnity agreement and one on which the Surety will ultimately prevail.

## 2.    *Irreparable Injury will be Suffered Unless the Injunction Issues*

31.    Not only will the Surety likely succeed on the merits of its claim for specific performance, but the Surety would also continue to suffer irreparable harm if the Indemnitors are not compelled to collateralize the Surety. When the Surety issued the Bonds it relied upon the ability of the Indemnitors to perform under the AOI and to indemnify the Surety for all loss and expense the Surety may sustain as result of issuing the Bonds.  The Surety would not have issued the Bonds without the financial guarantees contained within the AOI.

32.     The injunctive relief requested by the Surety would prevent the suffering of an imminent and irreparable injury typically required for preliminary injunctions. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2nd Cir. 2007). An imminent injury is one that is likely, rather than a mere possibility. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 375-76 (2008). An injury is irreparable if it cannot be prevented or fully rectified by an award of damages at the end of trial, such as when "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F2d 380, 386 (7th Cir. 1984); *see also Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).

33.     By their very nature, the rights to contractual and common law exoneration require pre-judgment relief. If such rights cannot be enforced at the inception of an action, but rather must await determination by final judgment, then such rights are meaningless. Should the Court not grant the Surety's application for preliminary injunction, the Surety's rights to contractual and common law exoneration and collateralization will be forever lost as will its rights to books and records under the control of the Indemnitors. The Surety has no adequate remedy at law, and the equitable relief sought herein constitutes the only means by which the Surety can secure adequate relief and by which furtherance of justice may be served.

34.     Despite the heightened standards for injunctive relief, Georgia courts are not hesitant to hold indemnitors to their contractual promises under similar facts. In *Hanover Ins. Co. v. Holley Constr. Co. & Assocs.*, 2012 U.S. Dist. LEXIS 14526, 2012 WL 398135 (M.D. Ga. Feb. 7, 2012), the Court was presented with a motion for injunctive relief after the indemnitors failed to collateralize their surety. *Id.* Given the uniqueness of this area of law, the Court looked to other jurisdictions and found a long line of precedent supporting the surety's argument

that failure to post collateral would leave it irreparably harmed without an adequate remedy at law:

> The Georgia courts have not specifically answered this question, but other courts have concluded that sureties are ordinarily entitled to specific performance of collateral security clauses. *E.g., Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*, No. 4:10-CV-1160 CAS, 807 F. Supp. 2d 820, 2011 U.S. Dist. LEXIS 86865, 2011 WL 3439129, at *6 (E.D. Mo. Aug. 5, 2011); accord *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984). The rationale for this conclusion is that although damages might be available to the surety in the future, the surety "bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond," and the availability of damages after trial would not protect a surety from a present risk of exposure. *Lake Asphalt Paving & Constr., LLC*, 807 F. Supp. 2d 820, 2011 U.S. Dist. LEXIS 86865, 2011 WL 3439129, at *5-*6; accord *Schwab*, 739 F.2d at 433 ("If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.") (internal quotation marks omitted).

*Id.* at *14-15. The *Hanover* Court found the above rationale to be persuasive and concluded that the surety had no adequate remedy at law for its claim for specific performance of the collateral security provision. *Id.*

35. For the same reasons, the Court also held that Hanover would suffer irreparable injury absent a preliminary injunction. *Id.* at *16 citing *Int'l Fid. Ins. Co. v. Anchor Envtl., Inc.*, Civil Action No. 07-04750, 2008 U.S. Dist. LEXIS 35996, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008) ("If [the surety] is deprived of the bargained-for collateral security, it will face the risk of being a general unsecured creditor of Defendants and of not being able to collect. To protect [the surety] from becoming a general creditor, the grant of specific performance to enforce the collateral security provision is warranted.").

36. In *Conart*, discussed above, the Court simply held that the surety met its burden on this element by virtue of the indemnitors' contractual promises. *Conart*, 2006 U.S. Dist. LEXIS 17787, *14. In that case, the Indemnitors "waive[d] any claims or defenses" contrary to

the agreement's collateral deposit provision.  *Id.* at *17.  Here, the Indemnitors similarly waived any right to contest the collateral deposit provision:

> The Contractor and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment.

(AOI, ¶ THIRD).

37.     Numerous other courts have held that there is an inherent absence of a legal remedy – and the equally inherent existence of an irreparable injury – where an indemnitor refuses to perform its contractual, common-law, and equitable rights, including those of exoneration and *quia timet*. *See*, *e.g., United Bonding*, 273 F. Supp. 929 (legal remedy for subsequent damages will not suffice when indemnitor refuses to voluntarily comply with surety's demands); *Milwaukee Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966); *Schwab*, 739 F.2d 431 at 433 ("sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced"); *Bib Constr. v. Fireman's Ins. Co. of Newark, NJ*, 214 A.D.2d 521 (N.Y. 1 App. Div. 1995) ("damage resulting from failure to give security is not ascertainable, and the legal remedy is therefore inadequate"); *Doster v. Continental Casualty Co.*, 268 Ala. 123, 105 So.2d 83 (Ala. 1958) ("it is not necessary for the surety to show any fraudulent disposition of property on the part of the principal or any special reason for fearing a loss").

38.     Without specific performance of the AOI, the Surety will suffer irreparable harm in that it will lose valuable contractual rights.   The refusal of the Indemnitors to post collateral security pursuant to its rights under the AOI raises significant questions on whether the Indemnitors are in the process of selling, diverting, or transferring assets and whether the

Principal has the financial ability to satisfy payment obligations to subcontractors and suppliers and/or complete the bonded projects. Against this backdrop, it is probable that the denial of the requested injunction will leave the Surety with rights, but no remedy. This is exactly the type of irreparable harm typically required for preliminary injunctions. *Travelers Casualty & Surety Co. v. Ockerlund*, No. 04-C-3963, 2004 U.S. Dist. LEXIS 15309, *7 (N.D. Ill. 2004), and *J. United Electric,* 62 F. Supp. 2d 915 are illustrative of this point[2].

39.     Here, the Surety has tried to work with the Indemnitors throughout the claims process, giving them ample opportunity to abide by the terms of the AOI. Unfortunately, however, as the claims and losses increased, the responsiveness of the Indemnitors has ceased. As the Surety fears that there will be no funds to indemnify it if it is forced to wait until the conclusion of this litigation, a preliminary injunction is the Surety's only recourse.

40.     The right of the Surety to collateral is absolute under the AOI and no indemnitor has any reasonable challenge to the legality of those provisions. If Indemnitors are not required by this Court[3] to post collateral sufficient to cover the obligations to the Surety under the AOI, it is unlikely that the Indemnitors will retain any ability to satisfy their contractual promises. This is the risk which the special security provision requiring posting of collateral is designed to avoid and absent its specific enforcement, the Surety will be irreparably harmed. If an injunction is not

---

[2]     In *Ockerlund*, the court reviewed an indemnity agreement with provisions requiring the indemnitors to protect the surety against any loss arising by reason of the issuance of the bond which also contained a collateral security agreement. *Ockerlund*, 2004 U.S. Dist. LEXIS 15309, *7. Reviewing the facts before it, the Court concluded that the surety would suffer irreparable harm if the injunction did not issue as it would be forced to use its own funds to defend and pay claims despite defendants' promises to protect the surety from this risk, and that by granting the injunction the court was only requiring the defendants to perform the obligations they had contractually agreed to undertake. *Id*. at *18.

[3]     It is clear that the Indemnitors have completely disregarded their contractual obligations and apparently do not feel that they are contractually obligated to perform. The only alternative for the Surety is to have the Indemnitors **ordered** to abide by the contract for which all of them willfully entered and agreed.

granted, the Surety will be robbed of the benefit of its bargain, and the provision promising the Surety immediate pre-judgment relief will be deemed meaningless.

### 3. The Threatened Injury to the Surety Outweighs the Threatened Harm the Injunction may do to the Indemnitors

41.     It is evident that the balance of harms in this matter tips in favor of the Surety. As the *Hanover* Court noted, the injury to a surety outweighs the threatened harm to indemnitors because "although Defendants may suffer harm as a result of the injunction, this harm is the result of enforcement of an Indemnity Agreement which Defendants entered; an injunction would only require Defendants to do that which they agreed to." *Hanover*, 2012 U.S. Dist. LEXIS at *16-17.

42.     Here, the threatened harm to the Surety outweighs the harm a preliminary injunction would inflict on the Indemnitors. *See Schiavo v. Schiavo*, 403 F.3d 1223-26 (11th Cir. 2005). The Indemnitors have a contractual obligation to post collateral security with the Surety. (AOI, ¶SECOND, THIRD). No harm will occur to the Indemnitors if this Court orders them to abide by their contractual obligations. *Schiavo*, 403 F.3d at 1225-26.

43.     By compelling the Indemnitors to deposit collateral with the Surety this Court would merely be requiring the Indemnitors to perform tasks they voluntarily agreed to perform when they executed the AOI. The Eastern District of Pennsylvania succinctly described this balancing of the equities as follows:

> [T]he issuance of an injunction will only require Defendants to do that to which they agreed — to place [the surety] in funds — and will only permit [the surety] to retain the funds until the rights of [the surety], [the indemnitors], and [the obligee] can be determined. [The indemnitors] are not unfairly prejudiced by being held to the Agreement of Indemnity to which they were signatories.

*Int'l Fid. Ins. Co. v. Anchor Envt'l, Inc.*, 2008 WL 1931004 at *7. In Georgia, the *Conart* Court described this issue as follows:

As surety, Plaintiff is allowed to hold any funds posted by Defendants in trust for payment only of those claims related to the bond at issue. All other funds necessarily will be returned to Defendants. Alternately, if the preliminary injunction is not granted, Plaintiff will be forced to continue to use its own funds in defense of the claims against Defendants. *See Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163 (7th Cir. 1954) (it is well established that a surety suffers serious harm when it has to use its own funds to defend and pay bonded claims)). The balancing of the interests, as currently presented to the Court, weighs in favor of Plaintiff.

*Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, *17 (M.D. Ga. Mar. 29, 2006). The Middle District of Tennessee explained the balancing of equities as follows:

[The principal] already received its benefit of the bargain by receiving, at low cost and without furnishing collateral, multi-million dollar bonds from [the surety] that enabled [the principal] to receive contracts such as the Lobby Project and Balcony Project. It is unfortunate that [the principal] ultimately was terminated from the Lobby Project by the Navy and was unable to reach an agreement with [the surety] to complete the job. **However, [the surety] is plainly entitled to its end of the bargain — *i.e.,* enforcement of [the principal]'s promise to secure [the surety] against any losses asserted because of [the principal]'s underlying failure to perform on a bonded contract**. Therefore, the court finds that the balance of the equities favors [the surety].

*Great Am. Inc. Co. v. SRS, Inc.*, 2011 WL 6754072 at *10 (M.D. Tenn. Dec. 23, 2011).

44.     To the extent the deposit of collateral may cause financial hardship to the Indemnitors, that financial hardship is exactly the type of risk the Indemnitors assumed the moment they executed the AOI as an inducement of the Surety's execution of the Bonds.

45.     By granting the injunction and ordering specific performance of the collateral security provisions of the AOI, all of the parties will be placed in the position which they bargained for at the time of the execution of the AOI. The Indemnitors will be required to perform as they contractually agreed to do, and the Surety will receive the collateral security to which it is entitled.

### 4.     *The Injunction would not be Adverse to the Public Interest*

46.     The final factor to be weighed by this Court is that of the interests of public policy in this dispute. The issuance of a preliminary injunction against the Indemnitors will further a

number of public interests, including (1) the enforcement of the clear and unambiguous terms of written indemnity agreements and (2) instilling confidence within the surety industry. Public construction projects cannot be bonded on the terms typical in the industry if the surety has no assurance that the protection of its indemnity agreement is not available. The general indemnity agreement literally represents the foundation of modern suretyship, and its enforcement is essential to the procurement of contract surety bonds to guarantee performance on construction projects.

47.     The Eastern District of Pennsylvania described a state's interest in enforcing contracts, and the corresponding boost in confidence within the surety industry, as follows:

> **[T]he issuance of a preliminary injunction furthers the public interest by recognizing and enforcing the plain language of a binding surety indemnification agreement**. It is undisputed that [the principal] is a public works contractor and that the performance and payment bonds at issue are public works bonds for a project in Pennsylvania, as required by [Pennsylvania law]. Pennsylvania has an important interest in seeing that the contractors on public works projects use contract funds to perform the work and pay subcontractors and suppliers, as well as adhere to the performance and payment provisions of the contracts and the Pennsylvania Procurement Code . . . . **The grant of a preliminary injunction vindicates this interest and encourages confidence in the surety bond process**.

*Int'l Fid. Ins. Co.*, 2008 WL 1931004 at *7 (emphasis added). The Southern District of Florida also recognized that the public has an interest "in seeing that contractual agreements between parties are upheld and in the continued solvency of surety companies for the public benefit." *Developers Sur. & Indemn. Co. v. Elec. Serv. & Repair, Inc*., 2009 WL 3831437, *2 (S.D. Fla. Nov. 16, 2009).

48.     In Georgia, the *Conart* Court held that because the indemnity agreement was willfully entered into by the indemnitors, a preliminary injunction would "not be adverse to the

public interest." *Great Am. Ins. Co. v. Conart Inc.*, 2006 U.S. Dist. LEXIS 17787, *18 (M.D. Ga. Mar. 29, 2006).

49.     Here, the Indemnitors agreed to the provisions of the AOI for the express purpose of obtaining bonds which were required as a condition to Principal's acceptance as contractor on the bonded Projects. Those bonds protect the owner, the public and the other contracting parties depending on the general contractor's performance. Public policy clearly supports protecting sureties, which make modern construction projects possible, and enforcing the explicit terms of agreements entered into by knowledgeable parties.

50.     The Surety is willing to post a bond in the amount the Court deems appropriate.

## IV.
## CONCLUSION

For these reasons, Plaintiff, International Fidelity Insurance Company, requests that the Court set its *Application for Injunctive Relief and/or Specific Performance* for hearing at the earliest possible time and, after hearing oral arguments, issue a preliminary injunction. Specifically, requests that the preliminary injunction:

> Order the Indemnitors to pay the Surety, or alternatively, pay into the registry of the Court $335,000, representing "amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss." (AOI, ¶SECOND).

Respectfully submitted,

KREBS FARLEY, PLLC

By: /s/ Brian A. Dodd
    Brian A. Dodd
    Bar No. 301055
    1950 Stonegate Dr., Suite 225
    Birmingham, AL 35242
    (205) 968-4009 Telephone
    (205) 968-7343 Facsimile
    bdodd@kfplaw.com

**ATTORNEYS FOR INTERNATIONAL
FIDELITY INSURANCE COMPANY**